**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **No. 1:25-cv-10492** |
| **GEORGE JOHN DRAZENOVIC,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

---

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC"), for its Complaint against Defendant George John Drazenovic ("Drazenovic") alleges as follows:

## NATURE OF THE ACTION

1.      George Drazenovic was an operative in several multi-million-dollar securities fraud schemes that spanned from at least April 2010 to October 2019 (the "Relevant Period"). During this period, Drazenovic recklessly furthered at least two distinct penny stock fraud rings—one led by Ronald Bauer (the "Bauer Ring") and the other having Daniel Ferris among its principals (the "Ferris Ring")—that engaged in pump-and-dump frauds which ultimately cost retail investors millions of dollars in losses.

2.      Specifically, Drazenovic, a British Columbia-licensed Chartered Professional Accountant ("CPA"), acted as a finder of mineral extraction or exploration rights, which then served as the purported marquee assets of at least ten different penny stock issuers (the "Issuers") and were central to the pump-and-dump frauds. Drazenovic facilitated the Rings' acquisition of the mineral rights in question for Issuers they controlled. Drazenovic selected the properties he

did because they were situated in proximity to renowned, abundant extractions of the same mineral. Further, Drazenovic also served as liaison between each mineral site's operators and the Bauer or Ferris Ring principals, thereby helping to conceal from site operators the respective Ring's secret control. Drazenovic then facilitated funding for the mineral sites from the Rings' leadership, which provided the funding anonymously through front companies.

3.      Drazenovic recklessly disregarded that the Rings (i) controlled and funded each Issuer; (ii) were not investing, and had no intention of investing, the resources necessary to discover or extract the respective minerals beyond minimal levels; (iii) nevertheless orchestrated promotional campaigns touting each Issuer's purportedly realistic prospects of near-term abundant extraction of the respective mineral; (iv) sold their stock into the share-price and buy-side demand rises those campaigns triggered; and (v) used proceeds from those sales to pay Drazenovic.

4.      During the Relevant Period[1], Drazenovic served as the mineral property finder and facilitator for at least the following Issuers:

| Issuer | Ticker | Ring Employing Defendant |
|---|---|---|
| Blue Eagle Lithium Inc. ("Blue Eagle") | BEAG | Ferris Ring |
| Black Stallion Oil & Gas Inc. ("Black Stallion") | BLKG | Bauer Ring (for all) |
| Virtus Oil & Gas Corp. ("Virtus") | VOIL | |
| Gray Fox Petroleum Corp. ("Gray Fox") | GFOX | |
| Bison Petroleum Corp. ("Bison") | BISN | |
| Great American Energy Inc. ("Great American") | SRBL | |
| American Liberty Petroleum Corp. ("American Liberty") | OREO | |
| Gold American Mining Corp. ("Gold American") | SILA | |
| American Power Corp. ("American Power") | AMPW | |
| Amerilithium Corp. ("Amerilithium") | AMEL | |

---

[1] Timeliness has been preserved at least in part by the parties' tolling agreements described at paragraph 61, below.

5.      By the conduct described herein, Drazenovic violated antifraud provisions of the federal securities laws, specifically, Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)]; and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

6.      Drazenovic will continue to violate the aforementioned provisions unless restrained or enjoined by this Court. Accordingly, the Commission seeks injunctive relief, civil penalties, and other appropriate and necessary equitable and ancillary relief.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1) and 77v(a)] and Sections 21(d), 21(e), 21A, and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa(a)].

8.      The Court has personal jurisdiction over Drazenovic and venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)] because, among other things, some of the acts and transactions in which Drazenovic engaged and that constitute violations of the federal securities laws occurred within the Southern District of New York. For example, retail investors residing within this District purchased stock in each of the ten Issuers; shares in almost all the ten Issuers were, in furtherance of the scheme, delivered to custodial firms headquartered within this district; and almost all wire transfers in furtherance of the scheme passed through banks headquartered in this District.

9.      In addition, this Court has personal jurisdiction because Drazenovic engaged in conduct within the United States that constituted significant steps in furtherance of the violations

of the federal securities laws alleged in this Complaint, even though some of the transactions at issue occurred outside the United States and involved foreign investors; and/or further because Drazenovic, whether within or outside of the United States, engaged in conduct that had a foreseeable substantial effect within the United States.

10.     In connection with the conduct alleged in this Complaint, Drazenovic, directly and indirectly, singly or in concert with others, has made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, the mails, and/or the facilities of a national securities exchange—namely, through Drazenovic's use of the internet when engaging in the acts and transactions described herein.

## **DEFENDANT**

11.     **George John Drazenovic ("Drazenovic")**, age 55, is a Canadian citizen residing in Burnaby, British Columbia, Canada. He has served as an officer and director of five public companies whose stock was quoted on U.S. markets:  Black Stallion Oil and Gas, Inc. (as Chief Executive Officer ("CEO"), Principal Accounting Officer, Principal Financial Officer and Director from July 2013 to March 2016), which is one of the issuers in this Complaint; Tornado Gold International Corp. (as Chief Financial Officer ("CFO") and Director from March 2006 to February 2012); Sun Cal Energy Inc. (as CFO and Director from November 2006 to September 2009); Oramed Pharmaceuticals Inc. and its predecessor, Integrated Security Technologies Inc. (as CFO and Director from March 2006 to August 2007); and St. James Gold Corp. (variously as CEO, CFO, Secretary and Director from September 2020 to March 2023). He holds a British Columbia Chartered Professional Accountant license, issued in 1998.

## RELATED PARTIES AND ENTITIES

### I.    DRAZENOVIC'S BUSINESS ASSOCIATES

12.    **Ronald Bauer a/k/a Ronald J. Bauer and Ronald Jacob Bauer ("Bauer")**, age 50, is a citizen of Canada and the United Kingdom who is currently residing in the United Kingdom. In February 2006, a final judgment was entered against Bauer, by consent, in the settlement of a SEC enforcement action involving a similar penny stock fraud scheme. *See SEC v. Bauer*, No. 05-cv-0426 (N.D. Tex., filed March 2, 2005). Bauer is also a defendant in another pending SEC civil action, as well as a parallel criminal action, involving several of the same penny stock fraud schemes at issue here. *See SEC v. Bauer et al*., No. 1:22-cv-3089 (S.D.N.Y., filed April 14, 2022); *see also United States v. Ronald Bauer*, et al., Case No. 22-cr-155 (S.D.N.Y., filed March 10, 2022 and unsealed April 14, 2022) ("parallel criminal case"). Bauer was Drazenovic's primary point-of-contact for Defendant's Bauer Ring work.

13.    **Daniel Mark Ferris ("Ferris")**, age 43, is a citizen of the United Kingdom currently residing in Monaco. Once a subordinate member of the Bauer Ring, and a codefendant in the pending cases cited in paragraph 12 above, Ferris played a leading role in the Ring (referred to herein as the Ferris Ring) that carried out the Blue Eagle pump-and-dump. Trading in Blue Eagle was halted by a Commission Order of Trading Suspension issued on July 1, 2019. Ferris was Drazenovic's primary point-of-contact for Drazenovic's Ferris Ring work.

### II.    ENTITIES LINKED TO DRAZENOVIC

14.    The **BVI Company**, which was incorporated in the British Virgin Islands in February 2010, was, at all relevant times, a front company administered by a Geneva, Switzerland-based external asset manager (referred to herein as "**Offshore Platform A**" defined below). During the Relevant Period, the BVI Company had banking and/or securities accounts,

at one or more of three different foreign banks. On paper, Drazenovic was the BVI Company's ultimate beneficial owner at all relevant times. Nevertheless, from 2010 until at least 2015, Bauer had greater de facto control over the BVI Company than Drazenovic; and, during those years, Bauer used the BVI Company, in part, for Bauer Ring activity not involving Drazenovic.

15.    **Offshore Platform A** was, at all relevant times, a Geneva, Switzerland-based external asset manager of which Drazenovic, Ferris, and the members of the Bauer Ring were clients.

16.    **Offshore Platform B** was, at all relevant times, a Geneva, Switzerland-based external asset manager of which Ferris was a client, and of which two other members of the Ferris Ring, who had formerly worked at Offshore Platform A, were principals.

### III.    THE ISSUERS WHOSE STOCKS WERE THE SUBJECT OF THE FRAUDS DESCRIBED HEREIN

17.    **Blue Eagle Lithium Inc.** (CIK 0001557668), known as Wishbone Pet Products Inc. until May 2018 ("Blue Eagle"), was at all relevant times a Nevada Corporation headquartered in Henderson, Nevada, that was purportedly in the lithium exploration business in Nevada. The company filed a Form 8-A12G on February 23, 2016, to register its common stock under Exchange Act Section 12(g). At all relevant times, Blue Eagle's securities were quoted on Over-the-Counter ("OTC") Link[2] under the symbol "BEAG," and it filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Exchange Act Section 13(a) and rules thereunder.

18.    **Black Stallion Oil and Gas Inc.** (CIK 0001542335), known as Secure IT Corp until August 2013, and known as Arize Therapeutics Inc. since September 2017 ("Black

---

[2] OTC Link is an interdealer quotation, messaging, and trading system for broker-dealers provided by OTC Link LLC, a wholly-owned subsidiary of OTC Markets Group.

Stallion") is a Delaware corporation headquartered in San Francisco, California, that, at all relevant times, was purportedly in the oil and gas business for properties in the Rocky Mountain States. As stated above, Drazenovic served as Black Stallion's CEO and Director from July 2013 to March 2016. The company filed a Form 8-A12G on July 12, 2016 to register its common stock under Exchange Act Section 12(g); on January 7, 2021, the Commission issued an order revoking that registration. At all relevant times, Black Stallion's securities were quoted on OTC Link under the symbol "BLKG," and it filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Exchange Act Section 13(a) and rules thereunder.

19.    **Virtus Oil & Gas Corp.** (CIK 0001478725), known as Curry Gold Corp until August 2013 ("Virtus") is a Nevada corporation headquartered in Los Angeles, California that, at all relevant times, was purportedly in the oil and gas business for properties in Utah and other western states. The company filed a Form 8-A12G on October 17, 2011 to register its common stock under Exchange Act Section 12(g); on April 26, 2019, the Commission issued an order revoking that registration. At all relevant times, Virtus's securities were quoted on OTC Link under the symbol "VOIL," and it filed periodic reports, Forms 10-K and 10-Q, with the Commission pursuant to Exchange Act Section 13(a) and rules thereunder.

20.    **Gray Fox Petroleum Corp.** (CIK 0001546589), known as Viatech Corp. until June 2013 ("Gray Fox") is a Nevada corporation headquartered in Dallas, Texas, that, at all relevant times, was purportedly in the oil and gas business for properties in the western United States. The company filed a Form 8-A12G on November 23, 2015 to register its common stock under Exchange Act Section 12(g); on April 2, 2019, the Commission issued an order revoking that registration. At all relevant times, Gray Fox's securities were quoted on OTC Link under the

symbol "GFOX," and it filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Exchange Act Section 13(a) and rules thereunder.

21.    **Bison Petroleum Corp.** (CIK 0001494722), known as Greenchoice International until June 2013, and as Yinhang Internet Technologies Inc. since November 18, 2015 ("Bison"), was at all relevant times a Nevada Corporation headquartered in Salt Lake City, Utah, that was purportedly in the oil and gas business for properties in Montana and Wyoming. The company filed a Form 8-A12G on December 27, 2011, to register its common stock under Exchange Act Section 12(g). At all relevant times, Bison's securities were quoted on OTC Link under the symbol "BISN," and it filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Exchange Act Section 13(a) and rules thereunder.

22.    **Great American Energy Inc.** (CIK 0001393403), known as Southern Bella Inc. until September 2011 ("Great American"), was at all relevant times a Delaware Corporation headquartered in Denver, Colorado, that was purportedly in the mineral exploration and development business. The company filed a Form 8-A12G on January 3, 2011, to register its common stock under Exchange Act Section 12(g). At all relevant times, Great American's securities were quoted on OTC Link under the symbol "SRBL," and it filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Exchange Act Section 13(a) and rules thereunder.

23.    **American Liberty Petroleum Corp**. (CIK 0001451929), known as Oreon Rental Corp. until June 2010 ("American Liberty"), was at all relevant times a Nevada Corporation headquartered in Bakersfield, California, that was purportedly in the oil and natural gas business. The company filed a Form 8-A12G on June 10, 2010, to register its common stock under Exchange Act Section 12(g). At all relevant times, American Liberty's securities were quoted on

OTC Link under the symbol "OREO," and it filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Exchange Act Section 13(a) and rules thereunder.

24.    **American Power Corp.** (CIK 0001436174), known as Teen Glow Makeup Inc. until May 2010 ("American Power"), was at all relevant times a Nevada Corporation headquartered in Denver, Colorado, and purportedly in the coal, oil and gas exploration business, particularly for properties in the Rocky Mountains region. The company filed a Form 8-A12G on May 28, 2009, to register its common stock under Exchange Act Section 12(g). At all relevant times, American Power's securities were quoted on OTC Link under the symbol "AMPW," and it filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Exchange Act Section 13(a) and rules thereunder.

25.    **Gold American Mining Corp.** (CIK 0001416090), known as Golf Alliance Corp. until March 2010, then as Silver America Inc. until June 2010 ("Gold American"), was at all relevant times a Nevada Corporation headquartered in Reno, Nevada, that was purportedly in the precious metals and minerals business. At all relevant times, Gold American's securities were quoted on OTC Link under the symbol "SILA," and it filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Exchange Act Section 13(a) and rules thereunder.

26.    **Amerilithium Corp**. (CIK 0001448763), known as Kodiak International Inc. until November 2009, and known as Integrated Energy Solutions Inc. since October 2014 ("Amerilithium"), was at all relevant times a Nevada Corporation headquartered in Lake Tahoe, Nevada, that was purportedly in the lithium business. At all relevant times, Amerilithium's securities were quoted on OTC Link under the symbol "AMEL," and it filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Exchange Act Section 13(a)

and rules thereunder.

## FACTUAL ALLEGATIONS

### A.  Overview of the Bauer and Ferris Ring Schemes

27.    In all nine of the Bauer Ring schemes, as well as in the Ferris Ring scheme, described in this Complaint, the respective Ring utilized essentially the same modus operandi:

>    a.    First, each Ring acquired control of all, or virtually all, the Issuer's freely tradeable shares;
>
>    b.    Second, each Ring allocated its shares—typically in just-under-5% tranches—among various offshore front companies (in order to create the false appearance of widely scattered, unrelated ownership, all below affiliate or reporting thresholds, thereby deceiving transfer agents and brokerage firms);
>
>    c.    Third, each Ring orchestrated and funded misleading promotional campaigns, to trigger rises in the share price of, and buy-side demand for, each Issuer's stock; and
>
>    d.    Fourth, each Ring then exploited the share-price and buy-side-demand rises it created by unloading its stock on unsuspecting and misled retail investors.

28.    In carrying out each of these steps each Ring used offshore accounts and entities to conceal their identities and their control over the Issuers' shares. Drazenovic knew or was reckless in not knowing about the Rings' modus operandi across the ten schemes.

29.    While many of the Bauer and Ferris Ring actions occurred abroad, all issuers involved in the scheme were publicly traded on U.S. over-the-counter markets (*e.g.*, OTC Link),

with the securities of six of them (Blue Eagle, Virtus, Great American, Bison, American Liberty and American Power) registered under Section 12 of the Exchange Act during the Relevant Period. The two Rings actively promoted, between them, all ten of the respective Issuers' stocks in the United States, traded those stocks in the United States, and United States-based investors were the primary victims of the schemes. Further, the Rings used United States-based transfer agents, custodial firms, and financial institutions to facilitate their schemes. Each Ring also deposited and sold shares through custodial firms based in the United States. Each Ring's misleading stock promotions were directed at retail investors in the United States. Each Ring funded these respective promotional campaigns through wires from offshore vehicles routed through New York banks to U.S.-based media companies. Finally, hundreds of retail investors in the United States, including within the Southern District of New York, purchased shares of the fraudulently promoted stocks, suffering substantial financial losses as a result.

        **B.    Drazenovic's Role in the Schemes**

        30.    Throughout the Relevant Period, Drazenovic acted as the respective Ring's finder and facilitator of mineral properties that would serve as marquee assets for at least ten different penny stock Issuers, nine controlled by the Bauer Ring, and the other by the Ferris Ring.

        31.    These mineral properties consisted of permits to perform mining, drilling, or other mineral extraction or exploration activity at various specific sites, typically on United States public land, in the Western United States, and administered by the Bureau of Land Management ("BLM") of the United States Department of the Interior. Drazenovic tailored his selections of mineral property to the mineral that was then most appealing to the Ring leaders. Ring leaders' preferences were oriented to those that currently seemed appealing to retail penny stock investors.

32.    In each case, Drazenovic chose a mineral property that was in the same vicinity as a renowned, abundant extraction of the same mineral. In some cases, Drazenovic arranged to acquire the permit in question directly from the BLM; more often, Drazenovic arranged to acquire rights in the permit from its current holder. Examples of the mineral properties Drazenovic sourced include:

| Property Name(s), State | Mineral | Penny Stock Issuer (TICKER) | Ring Employing Defendant |
|---|---|---|---|
| Railroad Valley (NV) | Lithium | Blue Eagle (BEAG) | Ferris Ring |
| West Ranch Prospect (NV) | Oil | Gray Fox (GFOX) | Bauer Ring |
| Bighorn Basin (WY) | Oil | Bison (BISN) | |
| Gabbs Valley / Kibby Flat (NV) | Oil | American Liberty (OREO) | |
| Keeno Strike (NV) | Gold | Gold American (SILA) | |
| Pace Project (MT) | Coal | American Power (AMPW) | |
| Paymaster Canyon (NV) | Lithium | Amerilithium (AMEL) | |
| Big Smoky Valley (NV) | Lithium | Great American (SRBL) | |
| Parowan Project (UT) | Oil | Virtus (VOIL) | |
| Woodrow Prospect (MT) | Oil | Black Stallion (BLKG) | |

33.    As part of his work, Drazenovic interfaced with each mineral property's on-site operators, arranging operational funding and encouraging the operators to engage in activity that could generate press releases. In each case, Drazenovic communicated with Ring leadership, and the Ring-supplied operational funding was paid anonymously through a Ring-funded and controlled offshore front company. Drazenovic knew or recklessly disregarded that such funding was not sufficient to position the Issuer to extract the respective mineral beyond minimal levels.

34.    In all of his work for each Ring, Drazenovic reported to, communicated with, and acted at the direction of, each Ring's leadership.

35.    In every case, as Drazenovic knew or recklessly disregarded, the mineral properties that Drazenovic sourced were touted in massive promotional campaigns, arranged and disseminated either by the Bauer Ring (for all but one of the stocks), or the Ferris Ring (for Blue

Eagle), urging investors to buy the penny stock in question. These campaigns shared common features, including assertions that:

- A celebrated source of the same mineral is situated nearby;

- The property is positioned to yield mammoth production of the mineral in question;

- Near-term takeover of the Issuer by an industry heavyweight is likely; and

- Massive returns are in store for those who buy the Issuer's stock now.

36.     Also in every case, as Drazenovic likewise knew or recklessly disregarded, the promotions urged investors not only to buy quickly, but also to *hold* the stock until specified price targets were reached. Examples include:

| Stock | Target Price Detail in Promo |
|---|---|
| Blue Eagle (BEAG) | High-End Price Target: $9.50 |
| Amerilithium (AMEL) | 12 Month Target: $7.65 |
| American Liberty (OREO) | First Target: $4.75 <br> Second Target: $8.30 |
| Gold American (SILA) | 6 months or less [sic]: $6.30 <br> 12-18 months: $13.85 <br> Long Term: $95.03 |
| American Power (AMPW) | Short Term: $9.74 <br> 6 Month Target: $12.49 <br> Take-Out Target: $50+ |
| Great American (SRBL) | Buy Price: Up to $2.50 <br> Conservative Strategy: <br> Sell Half at $5.00 Hold to $11.25 <br> Aggressive Strategy: <br> Buy and Hold to $18.00 |
| Virtus (VOIL) | Ideal Entry: Below $2.00 <br> Initial Target: $7 Per Share <br> Mid-Range Target: $44+ Per Share |
| Bison (BISN) | Short Term: $4.97/share <br> Mid Term: $9.94/share <br> Long Term: $24.87/share |
| Gray Fox (GFOX) | Buy to Price: Up to $4 Per Share <br> Near Target: $6.20 <br> Long Term: $11.00 and up |
| Black Stallion (BLKG) | Buy Price: Up to $2 Per Share <br> Near Target: $3.73 Per Share <br> Long Term: $45.15 Per Share |

37.    Also in every case, as Drazenovic knew or recklessly disregarded, the promotional campaigns took place notwithstanding (i) the absence of any significant mineral discovery, extraction or production underway by the relevant Issuer and (ii) any potential for any such significant discovery, extraction or production's occurring, if at all, being years away, and dependent, among other things, on levels of funding neither then being provided, nor planned or intended, by the relevant Ring.

### C.    Virtus Pump-and-Dump Scheme

38.    Drazenovic's critical role in the Bauer Ring's illegal pump-and-dump schemes is exemplified through his participation in the Virtus pump-and-dump, which resulted in illicit proceeds of as much as $23.1 million to the Bauer Ring.

39.    By October 2013, Drazenovic located and alerted the Bauer Ring to mineral properties comprising oil and gas leases covering thousands of acres in Iron and Beaver Counties, Utah, the larger of which, comprising over 50,000 acres, was known as the Parowan Prospect (hereinafter the "Parowan Prospect Site").

40.    By November 2013, Drazenovic, working with the Bauer Ring, had brokered the acquisition of working interests in more than 37,000 acres on the Parowan Prospect Site by the Bauer Ring-controlled Issuer, Virtus. With Drazenovic's assistance, by early June 2014, the Bauer Ring caused Virtus to expand its working interests on the Parowan Prospect Site to 55,477 acres.

41.    Meanwhile, beginning by November 2013 and continuing through at least 2014, Drazenovic interfaced with the operators of the Parowan Prospect Site and Virtus' CEO (who was a figurehead installed by the Bauer Ring), and regularly communicated with Bauer, to ensure, among other things, that the Parowan Prospect Site's basic funding needs were met and

14

that BLM fees on the mineral property remained current. Bauer caused the requested funding needs to be paid by the Bauer Ring to Virtus, through a front company the Bauer Ring established and funded (the "Pass Through Vehicle"). These disbursements included the following wires to Virtus:

| Date | Payor | Amount |
|---|---|---|
| 10 December 2013 | Pass Through Vehicle | $100,000 |
| 30 January 2014 | Pass Through Vehicle | $100,000 |
| 28 February 2014 | Pass Through Vehicle | $100,000 |
| 28 February 2014 | Pass Through Vehicle | $50,000 |
| 6 May 2014 | Pass Through Vehicle | $120,000 |
| 5 June 2014 | Pass Through Vehicle | $70,000 |
| 30 June 2014 | Pass Through Vehicle | $30,000 |
| 15 July 2014 | Pass Through Vehicle | $150,000 |
| 30 July 2014 | Pass Through Vehicle | $150,000 |
| 8 August 2014 | Pass Through Vehicle | $150,000 |
| 22 September 2014 | Pass Through Vehicle | $150,000 |

42.     Throughout his work for the Bauer Ring concerning Virtus, Drazenovic knew that the Bauer Ring controlled all, or virtually all, of Virtus' stock; controlled Virtus' corporate actions; and supplied Virtus' funding. Drazenovic likewise understood and expected, in accordance with his understanding with the Bauer Ring, to be compensated for his Virtus-related efforts, and knew, or recklessly disregarded, that the sole source of revenue from which the Bauer Ring could pay Drazenovic was Virtus stock sale proceeds. Drazenovic likewise knew, or recklessly disregarded, that the Bauer Ring's funding of Virtus was not sufficient to facilitate oil and gas discovery or extraction beyond minimal levels.

43.     Nevertheless, by June 24, 2014 – and in the absence of any significant oil and gas discovery or extraction at Virtus' Parowan Project Site – the Bauer Ring launched a massive marketing campaign promoting Virtus' stock. That campaign – of which Drazenovic was contemporaneously aware or recklessly disregarded – included claims that (i) Virtus' Parowan

15

Prospect Site "sits smack dab in the middle of the southward extension" of the Central Overthrust Belt, which "is dotted with numerous Billion-barrel petroleum discoveries"; (ii) Virtus' Parowan Prospect Site is part of a "U.S. Super-Field estimated to hold 3 TRILLION barrels of oil – or nearly DOUBLE the world's proven oil reserves"; (iii) Virtus would thus be a tempting target for Anadarko Petroleum Corp. in furtherance of its "2014 expansion agenda"; and (iv) investors who "jump on" Virtus "immediately" would "stand to make an Absolute Fortune in 2014!"

44.     The Virtus promotional campaign was accompanied by significant rises both in Virtus' share price – which climbed from a pre-campaign average of just 70 cents to a high of $2.24 – and in Virtus' buy-side demand for its stock – which climbed from a pre-campaign average daily volume of just 6,821 shares to daily trading volume as high as 2.6 million shares. The Bauer Ring took advantage of those increases by selling its Virtus stock to retail investors.

45.     During the Bauer Ring's selling of Virtus stock (which encompassed sales of over 16 million Virtus shares for illicit proceeds totaling as much as $23.1 million), at least 128 investors residing within the Southern District of New York purchased a total of at least 258,493 shares and sustained combined losses totaling at least $219,503.

46.     Between March 2015 and January 2016, Drazenovic received Virtus-stock-sale-proceeds-funded disbursements totaling at least $93,103.

**D.    Blue Eagle Pump-and-Dump Scheme**

47.     Drazenovic's critical role in the Ferris Ring's illegal pump-and-dump scheme, which resulted in illicit proceeds of as much as $6 million to the Ferris Ring, is detailed below.

48.     In July 2018, Drazenovic located and alerted the Ferris Ring – which included Ferris and two principals of Offshore Platform B, among others – to a property comprising 200 lithium claims on 4,000 acres in the Railroad Valley of Nevada ("Railroad Valley Site").

49.     By August 2018, Drazenovic, working with Ferris, had brokered the acquisition of the Railroad Valley Site by an Offshore Platform B-administered company Ferris owned ("Company A").

50.     Also, during August 2018, the Ferris Ring began closely coordinating with a group of investors that controlled Wishbone Pet Products, a company which was purportedly in the business of manufacturing dog waste removal devices ("former Wishbone Group"). The Ferris Ring and the former Wishbone Group agreed to join forces in a new entity that would become Blue Eagle. To effectuate this combination, Wishbone Pet Products changed its name to Blue Eagle and changed its business from dog waste removal to lithium exploration and production. The former Wishbone Group held a 60% equity stake in Blue Eagle and the Ferris Ring held the other 40%. Drazenovic then facilitated Company A's assignment of its Railroad Valley lithium claims to the new Blue Eagle entity.

51.     Over the ensuing months, Drazenovic interfaced with the operators of the Railroad Valley Site and regularly communicated with Ferris, to ensure, among other things, that the Railroad Valley Site's basic funding needs were met and that BLM fees on the mineral property remained current. Ferris caused the requested funding needs to be paid by Company A and by a second Offshore Platform B-administered company ("Company B"). These disbursements included the following wires to Blue Eagle:

| Date | Payor | Amount |
|---|---|---|
| 22 August 2018 | Company B | $50,000 |
| 4 October 2018 | Company A | $20,000 |
| 1 November 2018 | Company B | $12,500 |

| Date | Payor | Amount |
|---|---|---|
| 5 November 2018 | Company A | $39,975 |
| 12 December 2018 | Company B | $39,000 |
| 20 March 2019 | Company B | $12,950 |
| 11 April 2019 | Company B | $10,300 |
| 2 May 2019 | Company A | $24,960 |
| 11 June 2019 | Company B | $20,000 |
| 25 June 2019 | Company A | $14,975 |

52. Throughout his work for the Ferris Ring concerning Blue Eagle, Drazenovic knew that the Ferris Ring – given its ongoing close coordination with the former Wishbone group – controlled all, or virtually all, of Blue Eagle's stock, controlled Blue Eagle's corporate actions, and supplied Blue Eagle's funding. Drazenovic likewise understood and expected, in accordance with his understanding with the Ferris Ring, to be compensated for his Blue Eagle efforts, and knew, or recklessly disregarded, that the sole source of revenue from which the Ferris Ring could pay Drazenovic was Blue Eagle stock sale proceeds. Drazenovic likewise knew, or recklessly disregarded, that the Ferris Ring's funding of Blue Eagle was not sufficient to facilitate lithium discovery or extraction beyond minimal levels.

53. Nevertheless, by September 2018 – and in the absence of any significant lithium discovery or extraction at Blue Eagle's Railroad Valley site – the Ferris Ring launched a massive marketing campaign promoting Blue Eagle's stock. That campaign – of which Drazenovic was contemporaneously aware or recklessly disregarded – included claims that (i) Blue Eagle's Railroad Valley Site is "just north" of Clayton Valley, "which has been the source of historical lithium production levels for the past 50 years!"; (ii) Blue Eagle's Railroad Valley Site "could be a bona fide gusher" in lithium production; (iii) Blue Eagle would thus be a tempting target for Tesla and other large companies seeking to meet "massive lithium needs"; and (iv) investors who get "in early" by promptly buying Blue Eagle stock could be "pulling in the dough."

54.     The Blue Eagle promotional campaign was accompanied by significant rises both in Blue Eagle's share price (which climbed from an average of just 94 cents during the month prior to the campaign's launch to a high of $1.39), and in Blue Eagle's buy-side demand for its stock (which climbed from an average daily volume of just 17,167 shares during the month prior to the campaign's launch) to daily trading volume as high as 1.76 million shares. The Ferris Ring took advantage of those increases by selling its Blue Eagle stock to retail investors.

55.     During the Ferris Ring's selling of Blue Eagle stock (which encompassed sales of over 4 million Blue Eagle shares for illicit proceeds totaling as much as $6 million), at least 50 investors residing within the Southern District of New York purchased a total of at least 143,701 shares and sustained combined losses totaling at least $99,962.

56.     On July 1, 2019, however, before the Ferris Ring had completed its unloading of Blue Eagle's stock or made any Blue Eagle stock-sale-funded disbursements to Drazenovic, the Commission issued an Order of Trading Suspension that halted trading in Blue Eagle stock.

57.     Knowing that the Ferris Ring had sold millions of shares of Blue Eagle stock before the suspension, Drazenovic demanded (of Ferris and the two Offshore Platform B principals) to be paid out of those proceeds in accordance with their prior understanding. Ultimately, the Ferris Ring did so, wiring a total of $40,500 in Blue Eagle stock sale proceeds from an Offshore Platform B-administered account to a Drazenovic-controlled corporate account, in two wires of approximately $20,000 each, the first on or about September 5, 2019, and the second on or about October 15, 2019. These wires were supported by a misleading invoice Drazenovic supplied at the Ferris Ring's request, which contained no mention of Blue Eagle.

58.     Similarly, across all ten stocks identified in this Complaint, the relevant Ring's payments to Drazenovic for his efforts, drew from—as Drazenovic knew or recklessly disregarded—proceeds from the relevant Ring's sales of the stocks in question during the promotional campaigns. Such sales proceeds comprised, as Drazenovic knew or recklessly disregarded, each Ring's sole source of revenue deriving from its activities as to each of the Issuers.

59.     Since none of the Issuers' share prices attained the price targets in the promotional materials set forth in ¶ 36 above, Drazenovic likewise knew or recklessly disregarded that each Ring's sales of the stocks in question were for prices well below those for which the promotional campaigns urged investors to await before *they* sold.

60.     Across all ten Issuers, the relevant Ring paid its stock-sale-proceeds-funded disbursements to Drazenovic indirectly, after the stock in question had first been sold through the BVI Company, or through other accounts administered by Offshore Platform A, or (in the case of Blue Eagle) through accounts administered by Offshore Platform B. In all, these disbursements to Drazenovic totaled approximately $1.43 million, consisting of $40,000 from the Ferris Ring (Blue Eagle) fraud, and the remainder from the Bauer Ring frauds.

**TOLLING AGREEMENTS**

61.     Between July 2024 and September 2025, Drazenovic entered into twelve separate tolling agreements with the Commission. Each tolling agreement specifies a period of time (a "tolling period") in which "the running of any statute of limitations applicable to any action or proceeding against [Drazenovic] authorized, instituted, or brought by … the Commission… arising out of the [Commission's investigation of Drazenovic's conduct], including any sanctions or relief that may be imposed therein, is tolled and suspended…." Each tolling agreement further

provides that Drazenovic "shall not include the tolling period in the calculation of the running of any statute of limitations or for any other time-related defense applicable to any proceeding, including any sanctions or relief that may be imposed therein, in asserting or relying upon any such time-related defenses." Collectively, these agreements tolled the running of any limitations period or any other time-related defenses available to Drazenovic for a period of approximately one year and seven months, thereby preserving the timeliness of the Commission's claims as to all the conduct alleged herein that occurred since July 1, 2019 (insofar as civil penalties are concerned) and since at least July 1, 2014 (insofar as disgorgement is concerned).

**FIRST CLAIM FOR RELIEF**
**FRAUD IN THE OFFER OR SALE OF SECURITIES**
(Violations of Sections 17(a)(1) and (3) of the Securities Act)

62.    Paragraphs 1 through 61 are realleged and incorporated herein by reference.

63.    By reason of the conduct described above, Drazenovic, in the offer or sale of securities of one or more of Blue Eagle, Black Stallion, Virtus, Gray Fox, Bison, Great American, American Liberty, American Power, Gold American, and Amerilithium, Drazenovic, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting intentionally, knowingly, recklessly or negligently, (i) employed devices, schemes, or artifices to defraud; and/or (ii) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

64.    By his conduct described above, Drazenovic violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)].

## SECOND CLAIM FOR RELIEF
## FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
### (Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c))

65.     Paragraphs 1 through 61 are realleged and incorporated herein by reference.

66.     As described above, Drazenovic acting knowingly or recklessly, directly or indirectly, in connection with the purchase or sale of the securities of one or more of Blue Eagle, Black Stallion, Virtus, Gray Fox, Bison, Great American, American Liberty, American Power, Gold American, and Amerilithium, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange: (i) employed devices, schemes, or artifices to defraud; and/or (ii) engaged in acts, practices, or courses of business which operated or would have operated as a fraud or deceit upon any person.

67.     By his conduct described above, Drazenovic violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rules 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

### PRAYER FOR RELIEF

**WHEREFORE,** the Commission respectfully requests that this Court enter a Judgment that:

A.     In a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendant Drazenovic and his agents, servants, employees, and attorneys, and all persons in active concert or participation with him, who receive actual notice of the judgment by personal service or otherwise, from:

1.     violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii)

making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of any company;

2.  violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii) making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of any company; and

3.  directly or indirectly, including, but not limited to, through any entity he owns or controls, engaging in any activity for the purpose of inducing or attempting to induce the purchase or sale of any security; causing any person or entity to engage in any activity for the purpose of inducing or attempting to induce the purchase or sale of any activity; or deriving compensation from any activity engaged in for the purpose of inducing or attempting to induce the purchase or sale of any security; unless that security is: (i) listed on a national securities exchange; and (ii) has had a market capitalization of at least $50,000,000 for 90 consecutive days;

B.   Permanently bars Defendant Drazenovic from:

1.  participating in an offering of penny stock, pursuant to Section 20(g) of the
    Securities Act [15 U.S.C. § 77t(g)] and 21(d) of the Exchange Act [15 U.S.C.
    § 78u(d)]; and

2.  serving as an officer or director of any public company pursuant to Section
    21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

D.    Orders Defendant Drazenovic to pay civil monetary penalties pursuant to Section

20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15

U.S.C. § 78u(d)(3)];

E.    Orders Defendant Drazenovic to disgorge, with prejudgment interest, any and all

ill-gotten gains he received, as a result of the conduct described herein;

F.    Retains jurisdiction over this action to implement and carry out the terms of all

orders and decrees that may be entered; and

G.    Grant such further relief as the Court may deem just and proper.

## JURY DEMAND

The SEC demands a trial by jury on all issues so triable.


Dated:  December 18, 2025                    Respectfully submitted,


                                             /s/  Benjamin D. Brutlag
                                             _____
                                             Benjamin D. Brutlag (BB1196)
                                             David A. Nasse

                                             SECURITIES AND EXCHANGE COMMISSION
                                             100 F Street N.E.
                                             Washington, DC 20549
                                             Phone: (202) 551-4426 (Nasse direct)
                                                     (202) 551-2421 (Brutlag direct)
                                             E-mail:nassed@sec.gov (Nasse email)
                                                     brutlagb@sec.gov (Brutlag email)